

**CLERK'S OFFICE**
**A TRUE COPY**
Mar 20, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

In the Matter of the Search of: )
)
**Information Associated with Timing Advance "True** )
**Call" for all records and unique device/user identifiers** )  Case No. 23-M-342 (SCD)
**pertaining to Timing Advance (see attachments).** )
)
)

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of Wisconsin:

  See Attachment A.

I find that the affidavit(s) or any recorded testimony, establish probable cause to search and seize the person or property described above and that such search will reveal:

  See Attachment B.

**YOU ARE COMMANDED** to execute this warrant ON OR BEFORE ___4-3-23_____ (*not to exceed 14 days*)

☐ in the daytime between 6:00 a.m. and 10:00 p.m.     ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Stephen C. Dries
                                  *(United States Magistrate Judge)*

☒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
     ☒ for __30___ days (not to exceed 30)     ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: ____3-20-23. 4:00 pm_____          _____Stephen C. Dries_____
                                                                        *Judge's signature*

City and State: __Milwaukee, Wisconsin_____          __Stephen C. Dries, U.S. Magistrate Judge__

| **Return** | | |
|---|---|---|
| Case No: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken and/or name of any person(s) seized:

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the undersigned judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to a Timing Advance "True Call" area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the following listed dates, times and geographical boundaries (*distance from the GPS points*):

Location #1

GPS Coordinates: 43.1184670, -87.9069831          Radius:  0.35 Miles

Date: December 19, 2022                    Time: 9:33 PM – 10:03 PM (CST)

Location #2

GPS Coordinates: 43.0388053, -87.9576836          Radius:  0.35 Miles

Date: March 13, 2023                    Time: 8:18 AM – 8:48 AM (CST)

Location #3

GPS Coordinates: 43.1045619, -87.9666484          Radius:  0.35 Miles

Date: March 13, 2023                    Time: 11:27 AM – 11:57 (CST)

Location #4

GPS Coordinates: 43.0602813, -87.9141352          Radius:  0.35 Miles

Date: March 13, 2023                    Time: 12:04 PM – 12:34 PM (CST)

Location #5

GPS Coordinates: 43.1000629, -87.9601556          Radius:  0.35 Miles

Date: March 13, 2023                    Time: 12:49 PM – 1:19 PM (CST)

Location #6

GPS Coordinates: 43.1041779, -87.9169808          Radius:  0.35 Miles

Date: March 13, 2023                    Time: 1:21 PM – 1:51 PM (CST)

Location #7

GPS Coordinates: 43.0899526, -87.9762548     Radius: 0.35 Miles

Date: March 13, 2023                    Time: 4:11 PM – 4:41 PM (CST)

Location #8

GPS Coordinates: 43.0643554, -87.9068381     Radius: 0.35 Miles

Date: March 14, 2023                    Time: 1:00 PM – 1:30 PM (CST)

## ATTACHMENT B

### Items and Information to be seized and searched

All information that constitutes evidence of violations of 18 U.S.C. §§ 1951(a) and 924(c) committed on October 25, 2022, December 7, 2022, February 10, 2023, and March 13 involving multiple unknown individuals, including location information and identifying information as specified below.

1. T-Mobile/US Cellular shall provide responsive data for each search area described in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information that falls within the defined search area during the corresponding timeframe(s) listed in Attachment A, including records that identify:

   a. The unique identifiers for each wireless device that generated a Timing Advance "true call" record within the search area for each location, including International Mobile Subscriber Identifiers ("IMSI", International Mobile Equipment ("IMEI"), and the make and model of the device

   b. The starting and ending date/time of the connection along with the duration;

   c. For each communication with the network, the tower and the sector(s) (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;

   d. The service type for the communication; and;

   e. The estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance "True Call" records.

18

2. These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

3. It is anticipated that identifying information will be requested for devices whose characteristics meet any of the following criteria:

   a. Devices whose cellular network records; including distance from the tower and/or network derived latitude and longitude; are consistent with the facts of the investigation and would not solely reflect a device passing through.

4. However, it is noted that no subscriber information outside the initial search criteria is authorized by this warrant and additional legal process will be submitted.



CLERK'S OFFICE
A TRUE COPY
Mar 20, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

**Information Associated with Timing Advance "True Call" for all records and unique device/user identifiers pertaining to Timing Advance (see attachments).**

)
)
)
)
)
)

Case No. **23-M-342 (SCD)**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
18 U.S.C. 1951(a) - Hobbs Act Robbery
18 U.S.C. 924(c) - Brandishing a firearm during a crime of violence
The application is based on these facts: See attached Affidavit.

☒ Delayed notice of 30 days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Heather Wright, Special Agent, FBI
*Printed Name and Title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone

Date: 3-20-23

_____
*Judge's signature*

City and State: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed Name and Title*

I, Heather Wright, being first duly sworn on oath, on information and belief state:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for records and information associated with certain cellular towers ("cell towers") and records generated by the cellular network that are in the possession, custody, and/or control of T-Mobile/US Cellular, a cellular service provider headquartered at 4 Sylvan way, Parsippany, New Jersey, and US Cellular, a cellular service provider headquartered at 8410 W. Bryn Mawr Ave, Chicago, IL. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18 U.S.C. §2703(c)(1)(A) to require T-Mobile/US cellular to disclose to the government copies of the information further described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, as defined under Title 18 of the United States Code, I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3. This affidavit is based on my training, experience, personal knowledge, and observations in this investigation; upon my discussions with other law enforcement officers and

1

agents involved in this investigation; and, upon my review of official reports submitted in relation to this investigation.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Brandishing of a Firearm during a Crime of Violence, have been committed by multiple unknown individuals.  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

6.      On October 25, 2022, the Milwaukee Police Department responded to an armed robbery complaint at 2650 N. Martin Luther King Drive, Milwaukee, Wisconsin. Upon arrival, officers spoke with the victim, identified as a United States Postal mail carrier, hereinafter referred to as D.D. D.D. stated that he had been conducting his route at approximately 2:30 P.M., and was about to start at 2500 N. Richards Street, when he was approached by four young males. D.D. described Subject #1 as possibly a Hispanic male, approximately 19 years old. D.D. stated that Subject #1 and three other males, approached him from behind and demanded that he "give up his shit." D.D. stated that he heard one of the subjects say that they had a gun to his back. D.D. stated that he told the subjects that he was not going to give them anything and quickly turned around to face the attackers, fearing that one of them may have a gun. D.D. stated that he did not observe any of the subjects with a firearm and immediately took a fighting stance. Three of the subjects

2

ran away, while Subject #1 stayed and took a fighting stance as well. D.D stated that as Subject #1 attempted to punch D.D., D.D. attempted to punch Subject #1. D.D. stated that he was unsure if his punch made contact with Subject #1, however, Subject #1 staggered back and ran away. D.D. stated that Subject #1 ran eastbound and eventually northbound towards the alley, D.D. stated that he chased after Subject #1, however, he lost sight of Subject #1 and returned to his vehicle. D.D. stated that when he returned to his vehicle, he was unable to find his USPS issued Arrow key that had been hanging around his neck on a lanyard.

7.     On January 28, 2023, a photo array was presented to D.D. with the target of the photo array as JESSIE L. COOK (dob: 12/22/2003). D.D. identified COOK as the individual that had demanded his things and attacked D.D. on October 25, 2022.

8.     On December 7, 2022, the Milwaukee Police Department responded to 3205 N. Breman Street, Milwaukee, Wisconsin, for an armed robbery of a United States postal mail carrier, hereinafter referred to as E.V.  E.V. stated that at approximately 3:00 p.m., he had just finished delivering mail to 3219 N. Breman Avenue and was walking south towards the next block when he passed two subjects who were walking northbound on the west sidewalk.  E.V. stated that after they had passed, he could hear running footsteps approaching him from behind and he turned around. The same two subjects that had just passed him, ran up to him and one had a gun pointed at him.

9.     E.V. stated that Suspect #1 said "Gimme everything..gimme everything…gimme everything," while pointing a small framed semi-automatic hand gun at him. E.V. stated that he provided his ID and keys that were on a lanyard around his neck as well as the mail in his hands. E.V. stated that the key fob for the postal van as well as his arrow key were on the key ring that was provided. The Arrow key was specifically assigned to E.V. that day and can open the blue

3

mail boxes and some boxes at apartment buildings. E.V. stated that the serial number for the key provided was #30411. E.V. stated that Subject #2 took the ID with the keys attached but dropped the mail E.V. had handed to him. E.V. stated that he attempted to hand the Subjects his mail bag because it had scanned devices within the bag that could be GPS located, however, the subjects were not interested and were only interested in the lanyard and keys. E.V stated that he then ran to a corner bar for safety and called the police. E.V stated that the subjects ran southbound and heard a car squeal off in a hurry.

10.    Shortly after the incident, a witness approached him and told him that he saw the suspects get into a white Nissan Murano. That particular witness could not stay on scene, however, an additional witness also came forward and stated that they had observed the robbery and corroborated that she, too, had observed the suspects enter a white Nissan Murano.

11.    A canvas for video surveillance was completed and video surveillance from a Ring doorbell was obtained at 3219 N. Breman Street. After a review of the video, Subject #1 was observed to be a black, male, late teens, approximately 5'10", thin build, dark completed, wearing a black hoody, black mask (above eyes showing), light gray pants, black shoes, armed with a black semi-automatic handgun. Suspect #2 was observed to be a black, male, late teens, approximately 6'0" tall, thin build, medium complexion, wearing a black hoody, black mask (above eyes showing), black pants, white shoes, unknown if armed.

12.    On January 25, 2023, a state residential search warrant related to a drug investigation was executed at 2519 N. Buffum Street, Milwaukee, Wisconsin. Prior to the execution, two black males, and two black females were observed leaving the residence in a blue Toyota Camry. Shortly thereafter and just prior to the warrant execution, the blue Toyota returned with two of the four individuals inside. When officers approached the vehicle, they identified the

4

individuals as MARVIN TURNER (dob: 06/17/2000) and HUSSEIN A. HAJI (dob: 11/18/2001). Officers then executed the search warrant and identified HURIA H. ABU (dob: 12/27/2002), JESSIE L. COOK (dob: 12/22/2001), AMAURIE D. SMITH (dob: 08/13/2005) as well as two females who were not residents of the house. A search of the residence resulted in the recovery of a Glock 19 handgun (stolen out of Cudahy), a loaded Ruger P95 handgun, a loaded Ruger PC Charger carbine pistol, a loaded AK 7.62 cal pistol, which matched the description of the firearm used in the December 7, 2022 robbery, a GSG rifle upper with mock silencer, hundreds of pieces of stolen mail including personal and commercial checks from Milwaukee, Shorewood, Brookfield, Brown Deer, as well as others, checks currently being "washed" in acetone, keys on a bed located in a bedroom that unlocked a safe which contained 7K and a set of USPS keys. Both Arrow keys stolen in the October 25, 2022 and December 7, 2022 robberies were recovered. Officers also located keys for a Nissan Murano that unlocked a white Nissan Murano parked outside the residence and matched the vehicle description used in the October 25, 2022 and the December 7, 2022 robberies.

13. On February 10, 2023, the Milwaukee Police Department responded to an armed robbery that had occurred near 5273 N. 27th Street, Milwaukee, at approximately 11:40 A.M. The victim was identified as a United States Postal carrier, hereinafter referred to as N.M. N.M. stated that N.M. had been working mail route 88, had parked his mail vehicle near 2626 W. Rhor, and walked to the door to deliver the mail. N.M. stated that as he began to approach the residence of 5273 N. 27th Street from the north, he walked onto the small porch to place mail into the boxes. N.M. stated that he then observed three subjects come from the backyard (from the west of where he was) and surrounded him as he was on the porch. N.M. stated that he was somewhat trapped due to the railings on the porch and the three subjects surrounding him. N.M. stated that he had

the ring of apartment keys in one pocket of his outer most garment and the chain was exposed across his jacket leading to the Arrow key that was in the opposite pocket of his jacket,

14.     N.M. described Subject #1 as a black male, approximately 22-27 years old, over 6'0" tall, medium brown complexion, wearing a black ski mask covering his head, face and neck, with his eyes exposed, aviator sunglasses with plastic frames and gray/black lenses, a black hooded sweatshirt, dark jeans, unknown shoes, armed with a black Glock 9mm handgun with an extended magazine. N.M described Subject #2 as a black, male, approximately 22-27 years old, over 6'0" tall, medium brown complexion, wearing a black ski mask covering his head, face and neck with his eyes exposed, "beach style" square sunglasses, black hooded sweatshirt, dark blue jeans, unknown shoes, armed with a black Glock 9mm handgun with a tan extended magazine and switch attached to the back of the gun. N.M. stated that N.M. knew the term "switch" to be an added part on a gun that makes the firearm fully automatic. N.M. described Suspect #3 as a black, male, approximately 22-27 years old, over 6'0" tall, medium brown complexion, wearing a black ski mask covering his head, face and neck, with his eyes exposed, a black hooded sweatshirt, dark jeans, unknown shoes, armed with a black Glock 9mm handgun with an extended magazine.

15.     N.M. stated that Suspect #1 was armed with a gun which he held at his side when he demanded N.M.'s keys. N.M. stated that N.M. stated that he held up his hands while Suspect #1 grabbed the chain that was exposed outside on his jacket and took N.M. keys. N.M. stated that Suspect #2 approached him. Suspect #2 then used Suspect #2's gun to push up the brim of N.M.'s hat and asked N.M. what else he had. N.M. stated that he told the suspect that he didn't have anything else. N.M. stated that Suspect #3 did not say anything to him or touch him, but was armed with a gun in his waistband and positioned himself with the other two Subjects. N.M. stated that after the suspects obtained N.M.'s keys, all three suspects fled on foot in the same direction as they

6

had approached. N.M. stated that he heard car doors opening and a vehicle drive away but he did not look into the alley to obtain a vehicle description nor which direction they fled.

16.     A canvas for surveillance video was conducted and Ring video was located at 5248 N. 27th Street as well as surveillance video from 2800 W. Custer Ave. During the collection of the Ring video, officers were able to observe at 11:41AM, a white 2007-2012, 4 door, Nissan Altima driving southbound through the alley at a high rate of speed. The vehicle had tinted windows (including front window brow only), a sunroof, side window deflectors, six spoke aluminum rims (split spokes), damage to rear passenger bumper/quarter panel, damage to front passenger quarter panel, dual exhaust, and front and rear unknown registration plates. During a review of the surveillance video obtained from 2800 W. Custer, Officers observed the white Nissan Altima approach the alley at 11:38 A.M., from the west and drive southbound in the alley. Multiple suspects can be observed exiting the vehicle and proceed towards where the victim was robbed. The white Nissan continues southbound in the alley following the incident.

17.     On February 13, 2023, at approximately 2:52 PM., a law enforcement member of the Milwaukee Area Violent Crimes Task Force (MAVCTF) observed a vehicle matching the above description driving west on North Avenue from 73rd Street. The vehicle was a 2010 Nissan Altima 4 door (WI plate AJF-7039). The vehicle subsequently pulled into the Brother's Plus Grocery Store located at 4020 W. North Avenue. Task Force Officers (TFOs) observed a thin black male with shoulder length dreads exit the vehicle's front passenger door and enter the business. The subject was wearing a black T-shirt, camouflage pants, and white/black shoes. The subject then exited the store ad re-entered the Altima's front passenger door. TFO Strasser obtained a short video of the subject during the course of the surveillance.

18.     The vehicle was then observed driving to and parking in the rear 2225 N. 35th Street. Task Force Officers were able to run the plate and noted that the vehicle listed to ABDI BABA (dob: 01/01/1998), with an address of 2303 W. Cherry Street. This same vehicle was observed via a law enforcement camera system at West Silver Spring Drive and North Green Bay Avenue on February 10, 2023, at 11:08 A.M. The robbery occurred on February 10, 2023, at approximately 11:41 A.M and is 0.9 miles away from the West Silver Spring Drive and North Green Bay Avenue intersection.

19.     Task Force Officers were aware that there were several armed robberies of US Postal Carriers in recent months and that a search warrant had been executed on January 27, 2023, Task Force Officers were also aware that following the search warrant, several subjects were taken into custody and released, including HURIA H. ABU. ABU had been interviewed by MAVCTF TFO Brendan Dolan following his arrest while in custody. TFO Dolan was shown the short video clip of the surveillance of the subject that was observed getting in and out of the Nissan Altima. TFO Dolan was able to identify the subject as ABU, based on his prior interactions with him.

20.     On February 14, 2023, a state search warrant was obtained for a GPS tracker in order to identify location information for the 2010 Nissan Altima 4 door (WI plate AJF-7039), identified by law enforcement as the suspect vehicle in the February 10, 2023, armed robbery. On Friday March 3, 2023, a GPS was attached to the vehicle and the GPS began providing location information. Along with Officers observing and locating the vehicle at 2303 W. Cherry Street in order to place the GPS onto the vehicle, during the monitoring of the GPS, Task Force Officers have observed the vehicle and monitored the vehicle's GPS location at the Cherry Street address on numerous occasions.

8

21.     On March 13, 2023, Law Enforcement members of the MAVCTF and Milwaukee Police Officers responded to an armed robbery of a United Stats Postal mail carrier near 4548 N. 38th Street, Milwaukee. The victim, identified and hereinafter referenced as M.P., stated that at approximately 1:00 p.m., he parked his truck at 4501 N. 38th Street on the west side of the street, facing south. M.P. stated that while delivering mail at 4514 N. 38th Street, he observed two black males suspects on the west side of the street walking southbound. M.P. stated that the two seemed suspicious because they had masks on. M.P. stated that the two suspects walked past his truck, then walked in front of his truck eastbound. The suspects then went north on the east side of N. 38th Street. M.P. stated that he later observed them duck by the houses near 4518 N. 38th Street while he was further north delivering mail.

22.     M.P. stated that when he got near 4548 N. 38th Street, he observed the two suspects running at him. M.P. described suspect #1 as a black, male, approximately 16 years old, approximately 5'4", short, thin build, wearing a dark royal blue coat, black running pants, armed with a Draco styled gun with a wooden stock. M.P. described Suspect #2 as a black, male, approximately 6'0" tall, light complected, wearing a black jacket and black jogging pants. M.P. stated that one of them stated "don't run now bitch." M.P. stated that Suspect #1 pointed the gun at his head and said, "Give me the keys. Give me the keys. I'll shoot you." M.P. stated that they tried grabbing his keys from the right side of him, but they were on a lanyard. M.P. stated that he told them that the keys were on a lanyard so they unclipped them and ran northbound from the location and continued eastbound on W. Glendale.

23.     A witness to the incident, hereinafter P.M., stated that she heard talking outside and looked out her front window and observed the mailman running. She stated that she got up to the storm door and observed two suspects, one of which had a gun pointed at the mailman and was

wearing a blue coat. P.M. stated that she heard the mailman say "ok..ok" but did not hear what the suspects were saying. P.M. stated that she then grabbed her three-year-old nephew and pulled him to the ground for fear that shots would be fired. P.M. stated that she waited for the suspects to leave and called the police.

24.     Video surveillance was obtained from the Hopkins Food Mart located at 4601 N. Hopkins street, Milwaukee. The cameras were located on the south side of the business and the east side of the business. MACTF investigators observed a 2009 silver Honda Civic with front and rear plates, no sunroof, damage to front driver's quarter panel, 7 spoke hubcaps, broken front driver hubcap, with the front passenger inner headlight on (others defective), circling the block and fleeing the area of the robbery, just after it took place.

25.     An attempt to identify the vehicle was conducted by querying FLOCK and ALPR cameras in the area with a similar suspect vehicle description. A hit on a 2009 Honda Civic 4 door, WI plate ABG-8200, was obtained at several times on March 13, 2023 at the following locations:

    a.  16:26 – 21 SWE W. Fond Du Lac at Capital Ave.

    b.  13:36 – #01 N/B Port Washington @ Hampton Ave

    c.  12:19 – #10 MLK & W North – S/B

    d.  11:42 – 25 S/B N. Sherman at W Hampton

    e.  8:33 – 07 S/B N. 35th Street at W. Wisconsin

26.     The vehicle listed to a Mohammed F. Omar (dob: 01/01/1990) of 1809 W. McKinley Avenue, Milwaukee.

27.     A Milwaukee Police database query was then done for the Wisconsin plate ABG-8200. A call for service regarding a subject with a gun and shots fired was received on January 2, 2023 near North Buffum Street and East Wright Street. A second caller then called and reported

10

that her house had been struck by gunfire at 2513 N. Buffum Street. Officers responded and ran all vehicles in the area including a silver 2009 Honda Civic, WI plate ABG-8200, which was parked in front of 2519 N. Buffum Street (next door to 2513 N. Buffum, and also struck by the gunfire) when officers arrived. A body camera review of the responding officer was reviewed by investigators and the 2009 silver Honda was also observed driving by the officer at 10:42 a.m. on January 2, 2023.

28.     On March 14, 2023, an offline search of the 2009 Honda Civic, WI plate ABG-8200 was done and on December 19, 2023, the vehicle was run by Whitefish Bay Police Department. Your affiant contacted Whitefish Bay Police Department on March 14, 2023 and confirmed with Whitefish Bay Detective Joe McLeod that the vehicle was traffic stopped on December 19, 2023 at 9:48 p.m., at the intersection of Santa Monica and W. Silver Spring Drive in Whitefish Bay, for speeding, driving without a license, and failure to stop at a stop sign. The driver of the vehicle was identified as HURIA H. ABU, dob: 12/27/2002. ABU provided Whitefish Bay with a home address of 2519 N. Buffum Street.

29.     Also, on March 14, 2023, surveillance was conducted at 2519 N. Buffum Street by law enforcement members of the MAVCTF. At approximately 1:15 p.m., investigators observed the silver 2009 Honda Civic, bearing WI plate ABG-8200 pulling away from the address 2519 N. Buffum Street, Milwaukee.

30.     Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

31.     In my training and experience, I have learned that T-Mobile and US Cellular are companies that provides cellular communications service to the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data.  When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it. Additionally, cellular service providers such as T-Mobile and US Cellular also capture historical location data that is generated and derived from a cellular device's interaction with the cellular network. This information may include but not be limited to a cellular device's estimate distance from a particular cell tower and T-Mobile and US Cellular's network derived location of the device in latitude and longitude.

32.     Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

33.     Based on my training and experience, I know that cellular providers, such as T-Mobile and US Cellular routinely and in their regular course of business maintain historical cell-

tower log information, including records identifying wireless communications that were transmitted through a particular cell tower. For each communication, these records may include the telephone call number and unique identifiers for the wireless device that sent or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the cell tower(s) that handled the communication as well as the "sectors" (i.e. the faces of the towers) that received a radio signal from the locally served wireless device; and the type of communication transmitted (such as phone call or text message).

34.     Furthermore, cellular providers such as T-Mobile and US Cellular in their regular course of business maintain certain types of location data associated with a cellular device based on that cellular device's interaction with the cellular network. For these interactions with the cellular network these records may include unique identifiers for the wireless device that interacted with the network ("the locally served wireless device'); the date, time and duration of the interaction with the network; the cell tower and sector (i.e. face of the tower) that was involved; the estimated distance from the tower and sector that the cellular device was located; and the estimated latitude and longitude of the cellular device. The aforementioned location information is often contained within Timing Advance data, also known as True Call, that is captured and controlled by T-Mobile and US Cellular.

35.     Based on my training and experience and the above facts, information obtained from cellular service providers such as T-Mobile and US Cellular reveal cell towers (and, where applicable, sector) that were used and the estimated location information (the estimated distance from the tower and sector and estimated latitude and longitude) of a given cellular device to

13

engaged in a particular communication or interaction with the cellular network can be used to show that the device was in the general vicinity of the cell tower or an estimated location at the time the communication or network interaction occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of:

    a. The intersection of Santa Monica and W. Silver Spring Drive, Whitefish Bay, Wisconsin, on December 19, 2022 from approximately 9:33 PM – 10:03 PM (CST)

    b. The intersection of N. 35th Street and W. Wisconsin Ave, Milwaukee, Wisconsin, on March 13, 2023, from approximately 8:18 AM – 8:48 AM (CST)

    c. The intersection of N. Sherman Ave. and W. Wisconsin Ave, Milwaukee, Wisconsin, on March 13, 2023, from approximately 11:27 AM – 11:57 (CST)

    d. The intersection of N. Doctor M.L.K. Dr. and W. North Ave., Milwaukee, Wisconsin, on March 13, 2023, from approximately 12:04 PM – 12:34 PM (CST)

    e. 4548 N. 38th Street, Milwaukee, Wisconsin, on March 13, 2023, from approximately 12:49 PM – 1:19 PM (CST)

    f. The intersection of N. Port Washington Rd and W. Hampton Ave, Milwaukee, Wisconsin, on March 13, 2023, from approximately 1:21 PM – 1:51 PM (CST)

    g. The intersection of W. Fond du Lac Dr. and Capital Ave., Milwaukee, Wisconsin, on March 13, 2023, from approximately 4:11 PM – 4:41 PM (CST)

    h. 2519 N. Buffum Street, Milwaukee, Wisconsin, on March 14, 2023 from approximately 1:00 PM – 1:30 PM (CST)

36. Probable cause exists to believe that the records requested contain evidence related to identifying the telephone number associated to HURIA H. ABU as well as other suspects involved in the Hobbs Act Robbery that occurred on March 13, 2023, in violation of Title 18 U.S.C. § 1951(a) Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Brandishing a Firearm during a Crime of Violence

## **AUTHORIZATION REQUEST**

37.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to title 18 U.S.C. §2703(c) and Federal Rule of Criminal Procedure 41.

38.     I further request that the Court direct T-Mobile/US Cellular to disclose to the government any information described in Attachment B that is within its possession, custody, or control. Because the warrant will be served pm T-Mobile/US Cellular, who will then compile the requested records at a time convenient to it, reasonable cause to permit the execution of the requested warrant at any time in the day or night.

39.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to a Timing Advance "True Call" area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the following listed dates, times and geographical boundaries (*distance from the GPS points*):

Location #1

GPS Coordinates: 43.1184670, -87.9069831        Radius:  0.35 Miles

Date: December 19, 2022                Time: 9:33 PM – 10:03 PM (CST)

Location #2

GPS Coordinates: 43.0388053, -87.9576836        Radius:  0.35 Miles

Date: March 13, 2023                Time: 8:18 AM – 8:48 AM (CST)

Location #3

GPS Coordinates: 43.1045619, -87.9666484        Radius:  0.35 Miles

Date: March 13, 2023                Time: 11:27 AM – 11:57 (CST)

Location #4

GPS Coordinates: 43.0602813, -87.9141352        Radius:  0.35 Miles

Date: March 13, 2023                Time: 12:04 PM – 12:34 PM (CST)

Location #5

GPS Coordinates: 43.1000629, -87.9601556        Radius:  0.35 Miles

Date: March 13, 2023                Time: 12:49 PM – 1:19 PM (CST)

Location #6

GPS Coordinates: 43.1041779, -87.9169808        Radius:  0.35 Miles

Date: March 13, 2023                    Time: 1:21 PM – 1:51 PM (CST)

Location #7

GPS Coordinates: 43.0899526, -87.9762548        Radius:  0.35 Miles

Date: March 13, 2023                    Time: 4:11 PM – 4:41 PM (CST)

Location #8

GPS Coordinates: 43.0643554, -87.9068381        Radius:  0.35 Miles

Date: March 14, 2023                    Time: 1:00 PM – 1:30 PM (CST)

17

# ATTACHMENT B

## Items and Information to be seized and searched

All information that constitutes evidence of violations of 18 U.S.C. §§ 1951(a) and 924(c) committed on October 25, 2022, December 7, 2022, February 10, 2023, and March 13 involving multiple unknown individuals, including location information and identifying information as specified below.

1. T-Mobile/US Cellular shall provide responsive data for each search area described in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information that falls within the defined search area during the corresponding timeframe(s) listed in Attachment A, including records that identify:

   a. The unique identifiers for each wireless device that generated a Timing Advance "true call" record within the search area for each location, including International Mobile Subscriber Identifiers ("IMSI", International Mobile Equipment ("IMEI"), and the make and model of the device

   b. The starting and ending date/time of the connection along with the duration;

   c. For each communication with the network, the tower and the sector(s) (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;

   d. The service type for the communication; and;

   e. The estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance "True Call" records.

18

2.  These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

3.  It is anticipated that identifying information will be requested for devices whose characteristics meet any of the following criteria:

    a.  Devices whose cellular network records; including distance from the tower and/or network derived latitude and longitude; are consistent with the facts of the investigation and would not solely reflect a device passing through.

4.  However, it is noted that no subscriber information outside the initial search criteria is authorized by this warrant and additional legal process will be submitted.

19